**MISSISSIPPI POWER COMPANY,**
Plaintiff,

v.

**PEABODY COAL COMPANY and Commercial Transport Corporation,**
Defendants.

Civ. A. No. S75–125(c).

United States District Court,
S. D. Mississippi, S. D.

Jan. 2, 1976.

Peabody Coal Company (Peabody) and Commercial Transport Corporation (Commercial), seeking $346,318,012.00 in damages for the alleged breach of a coal supply contract. Also sought were (1) a declaratory judgment that Peabody's *force majeure* excuse for non-performance of the contract is not valid; (2) a judgment requiring Peabody to specifically perform said coal supply contract; and (3) an injunction, *pendente lite,* requiring Peabody to continue to supply the full tonnage of coal called for in the coal supply contract. Against Commercial MPC sought only a declaration that MPC was relieved from tendering for transport the minimum tonnage required by its barge contract with Commercial. MPC also sought discovery in the form of interrogatories and requests for production of documents.

The coal supply contract had an arbitration clause. Pursuant to the Federal Arbitration Act, Peabody moved for a stay pending arbitration. Peabody also filed a motion to postpone discovery, except as related to issues raised by its motion to stay while the court was considering the motion to stay.

After briefing and oral argument, District Judge Harold Cox filed a memorandum opinion on July 23, 1975. This was followed by an "Order for Arbitration" entered August 6, 1975. The opinion and order found: (1) that the contract between MPC and Peabody was one involving and affecting interstate commerce; (2) that it contained an agreement to arbitrate any unresolved controversy between the parties or claims of one party against the other under the rules of the American Arbitration Association. The Court therefore ordered the parties to proceed with such arbitration, but retained full jurisdiction of the case to make available to the parties all discovery processes provided by the Federal

Eaton, Cottrell, Galloway & Lang, James S. Eaton and Ben H. Stone, Gulfport, Miss., for plaintiff.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, L. Murray Alley, Birmingham, Ala., and Butler, Snow, O'Mara, Stevens & Cannada, Junior O'Mara, Jackson, Miss., for Peabody Coal Co.

COLEMAN, Circuit Judge.[*]

I. *Background*

Mississippi Power Company (MPC), plaintiff, has filed a civil action against

[*] Sitting by designation as a Judge of the United States District Court for the Southern District of Mississippi.

Rules of Civil Procedure. In this respect the order provided:

> This Court expressly retains full jurisdiction of this case and in the meantime, will make available to the parties all discovery processes provided by the Civil Rules of Federal Procedure to the extent that it may be necessary to the presentation and decision of any disputed facts in the case as may be helpful under Civil Rule 81 (a)(c) [*sic*, 81(a)(3)] of the Federal Rules of Civil Procedure. In the meantime, this proceeding shall be stayed in this Court without prejudice or advantage to either party. The plaintiff may continue all discovery processes and have the processes of this Court available to enforce answers thereto within the time contemplated by such rules. The defendant (Peabody Coal Company) shall answer any interrogatories presently outstanding within 15 days. Further discovery processes shall be commenced and concluded within ninety days after this date.

Peabody appealed only that portion of the order which provided discovery under the Federal Rules of Civil Procedure. October 6, 1975, Peabody's appeal was dismissed because it was not taken from a final appealable order.

Subsequently, Judge Cox recused himself. Sitting by designation as a District Judge for the Southern District of Mississippi, the author of this opinion took over the case.

Discovery proceeded, but Peabody objected to certain of Miss. Power Company's interrogatories and requests for production of documents. Peabody refused certain MPC requests for production of particular documents on the ground that they were not relevant to the issues presented for arbitration and were overly broad and all-inclusive. MPC filed a motion to compel discovery. An extended hearing was held in chambers on November 21, 1975 in Ackerman, Mississippi. This Court, *sua sponte*, questioned Miss. Power Company's right to discovery and requested that the issue be briefed.

## II. *Issues*

Accordingly, we now confront the task of deciding one issue, possibly two:

(1) Judge Cox having ordered that discovery may proceed under the auspices of the Court in an arbitrable case, does that order bind a superseding judge when he comes to consider the enforcement of the order?;

(2) When a Court stays a suit in order that arbitration may be had, does it have any further authority or jurisdiction to order that discovery may proceed, either as to the merits of the suit or in aid of arbitration?

Obviously, if the answer to Question No. 1 is negative, I do not reach Question No. 2.

III. *May one District Judge overrule or set aside a motion granted by another District Judge in the same case when the latter judge is subsequently brought into the case because of the recusation of the original judge?*

■ In his treatise Professor Moore quotes Judge Lummus of the Massachusetts Supreme Court in *Peterson v. Hopson*, 1940, 306 Mass. 597, 603, 29 N.E. 2d 140, 145, as follows:

> "A judge should hesitate to undo his own work. . . . Still more should he hesitate to undo the work of another judge. . . . But until final judgment or decree there is no lack of power, and occasionally the power may properly be exercised."

Professor Moore correctly declares this to be the general federal doctrine. 1B Moore's Federal Practice ¶0.404[4] at 453 (2nd ed. 1974).

The Second Circuit in 1925 reviewed the case law then existing and decided that one judge of a co-ordinate jurisdiction sitting in the same case could not overrule the previous decisions of an-

other judge. *Commercial Union of America v. Anglo-South American Bank,* 2 Cir., 1925, 10 F.2d 937. In *Dictograph Products Co. v. Sonotone Corp.,* 2 Cir. 1956, 230 F.2d 131, 136 the Court modified this view, stating that whether to overrule a previous judge's decision in the same case is for the discretion of the second judge. The Court elaborated as follows:

No one will suggest that the first judge himself may not change his mind and overrule his own order, so that the basis of the doctrine can only be that there are reasons why the second judge may not do so that do not exist when the first does. We can think of only two such reasons: (1) the second judge should defer to the rule of the first as a matter of mutual respect between members of the same court; (2) if he does not so defer, the defeated party may shop about in the hope of finding a judge more favorably disposed. The first reason is clearly untenable; judicial sensibilities should play no part in the disposition of suitors' rights. The second reason has indeed much to recommend it, and, as a matter of practice, has been universally regarded a sufficient reason for treating the first ruling as conclusive. It is, however, quite another question whether under all circumstances it makes the first ruling immune from reconsideration.

230 F.2d at 134–35.

The Third Circuit *en banc* considered whether the rule of the "law of the case" prohibits judges of co-ordinate jurisdiction from overruling one another in *TCF Film Corp. v. Gourley,* 3 Cir. 1957, 240 F.2d 711. The Court discussed *Dictograph, supra,* and then delivered the following holding:

It is true that the *Dictograph* case indicates that the rule under discussion is not absolute and all-embracing in its scope. There are, as that case illustrates, exceptional circumstances under which courts have held that one judge of a district court may overrule a decision by another judge of his court in the same case. Nonetheless we think that the rule is a most salutary one. We adhere to it and hold that except under the most extraordinary circumstances it should be followed by the district judges of this circuit.

\*    \*    \*    \*    \*    \*

As we have said, there may be exceptional circumstances under which the rule is not to be applied. Such circumstances exist when the judge who made the original decision is not available to consider the application to rehear and reverse his decision. 240 F.2d at 713–14.

The Ninth Circuit is even broader in its interpretation of when one judge may overrule another. In *Castner v. First National Bank of Anchorage,* 9 Cir. 1960, 278 F.2d 376, 380 the Court held that where there are "cogent reasons" [1] or "exceptional circumstances",[2] one judge may set aside or reverse a prior order made by a colleague, the question being merely one of a proper exercise of judicial discretion. The Court spoke to what they considered cogent reasons in the following manner:

The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case. He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial. We think that these are cogent reasons and exceptional circumstances which justify a departure from

---

1. Derived from language in *Shreve v. Cheesman,* 8 Cir., 1895, 69 F. 785, 791.

2. Derived from language in *TCF Film Corp. v. Gourley,* 3 Cir., 1957, 240 F.2d 711, 713.

the rule of comity within the permissible limits of judicial discretion.

278 F.2d at 380.

The Fifth Circuit apparently first considered the issue in *United States v. Koenig*, 5 Cir. 1961, 290 F.2d 166, 172, *aff'd sub nom., DiBella v. United States*, 1962, 369 U.S. 121, 82 S.Ct. 654, 7 L. Ed.2d 614. In *Koenig* the District Court had granted a pre-indictment motion to suppress evidence and the government had appealed. The case dealt mainly with the finality of the District Court's order for appeal purposes, but the Court did speak in dictum to the issue of one judge overruling another. For the Court, Judge Wisdom wrote:

> When we get down to the bare bones of the argument, we find the government contending that in the same district or circuit a pre-trial suppression order "binds" the trial judge . . . therefore, the order is final, and appealable. It is certainly proper that, generally, one judge, in co-ordinate jurisdiction with another judge, should not overrule that order. But as we read the cases, this matter is essentially one within the sound discretion of a trial judge conducting his court in the interest of furthering the administration of justice.

290 F.2d at 172 (footnotes omitted).

The Court went on to say that the trial judge was not bound by a pre-trial suppression order, "if in the exercise of a sound discretion he should decide that exceptional circumstances require the admission of the evidence". *Koenig, supra* at 174. *See also United States v. Scott*, 524 F.2d 465, 466–68, 5 Cir. 1975.

In *Ward v. Louisiana Wild Life and Fisheries Comm'n.*, E.D.La.1963, 224 F. Supp. 252, 255, *aff'd.*, 5 Cir. 1965, 347 F.2d 234, the Court squarely faced the issue now before us. A motion to dismiss had been denied twice previously when the case was transferred to another division of the District Court and thereupon re-urged. The Court this time

granted the motion to dismiss and declared:

> A United States district judge is most reluctant to reverse or change a ruling or order of another district judge, sitting on the same case, in the same court, and will do so only for the most compelling reasons. However, the power and authority of a judge to overrule a previous decision of a prior judge, sitting on the same case in the same court, is well established.

224 F.Supp. at 255.

The Court in *Woods Exploration & Prod. Co. v. Aluminum Co. of America*, S.D.Tex.1968, 284 F.Supp. 582, *rev'd* on other grounds, 5 Cir. 1971, 438 F.2d 1286, *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972), relied on *Ward v. Louisiana Wild Life & Fisheries Comm'n., supra*, in stating:

> the law does not require a judge who will ultimately handle a case to decline to make an independent and objective determination of issues which are properly raised. Rather, whether to go into the merits of a question previously decided in a case prior to final judgment is a matter within the considered discretion of the judge.

284 F.Supp. at 585.

From the above quoted Fifth Circuit cases it would appear to be the law in this Circuit that a District Judge must be cautious about overruling the prior orders of another District Judge in the same case; nevertheless, he may do so in the exercise of sound discretion and particularly if he is convinced that such action is dictated by the interests of justice.

This, however, was muddied recently by language appearing in *Stevenson v. Four Winds Travel, Inc.*, 5 Cir. 1972, 462 F.2d 899. In *Stevenson* a tour guest had initiated a personal injury action against a travel agency for an accident incurred on a tour. The case came to be heard on the travel agency's motion for

summary judgment, which was denied by Judge James L. King. The case was subsequently transferred from Judge King's docket to that of Judge Emett C. Choate, of the same District Court. Before the case was called for trial, Judge Choate stated that he would direct a verdict against the plaintiff after she had presented her case. Plaintiff's case was presented by stipulation and, true to his word, Judge Choate directed a verdict for the defendant. The Court of Appeals *reversed,* saying:

> Judge Choate, in directing a verdict for Four Winds on the identical record, in effect overruled Judge King's decisions and orders.

> The rule in most of the national courts that have passed on the question is that where a judge of a United States District Court or a judge assigned to a United States District Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge of such District Court, the latter judge should respect and not overrule such decision and order.

> \*    \*    \*    \*    \*    \*

> Judge Choate should have respected and not attempted to overrule the decisions rendered and orders entered in the case by Judge King while it was on his calendar.

462 F.2d at 904–05 (footnote omitted).

Curiously, the opinion neither cites nor discusses the prior *Koenig* and *Ward* cases from our ·Circuit, hereinabove considered. Instead, it relied on some old Eighth and Tenth Circuit decisions. Those cases have, over the years, suffered considerable erosion.

In any event, the *Stevenson* opinion went on to examine the record and held that the plaintiff had made out a prima facie case, which should have gone to the jury. It was nowhere stated that Judge Choate had exceeded his discretion, but if the plaintiff had made out a prima facie case, then an abuse of discretion was the decisive factor in the case. ·Since *Koenig* and *Ward* were not discussed, distinguished, or overruled in *Stevenson,* I would consider that they survive as the law of this Circuit, controlling the answer to Question Number 1. Where justified by sound discretion, exercised in the interest of justice, the question may be met with an affirmative answer.

This necessitates consideration of Question Number 2.

IV.  *Does a Court staying proceedings before it in order that arbitration may be had have authority or jurisdiction to order discovery as to the merits of the controversy?*

■    In his opinion in the instant case Judge Cox stated that "[n]othing is before the Court in this case except the question as to the right of the defendant to invoke and have arbitration of its differences under this contract". In this, Judge Cox was undoubtedly correct. By Section 23 of their contract the litigants had agreed as follows:

> *Section 23.   Arbitration.* Any unresolved controversy between the parties and claims by one party against the other shall, at the written request of either party, be submitted to arbitration and shall be determined under the rules of the American Arbitration Association. The cost and expense of any arbitration shall be shared equally by the parties.

Peabody had moved the Court for and had obtained a stay under authority of the U. S. Arbitration Act, 9 U.S.C. § 3 (1971):

> § 3.   Stay of proceedings where issue therein referable to arbitration

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in

which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

July 30, 1947, c. 392, 61 Stat. 670.

The Supreme Court construed § 3 of the Act in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 1967, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. In *Prima Paint* the plaintiff brought an action to rescind a contract for fraud in its inducement. The defendant moved to stay the action pending arbitration, contending that the issue of whether the contract was procured by fraud should be decided by the arbitrator. The Court held that a claim of fraud in the inducement of an entire contract should be resolved by an arbitrator and not by the federal courts because the parties had agreed to arbitrate "any controversy". The Court wrote specifically:

> We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

The parties do not challenge that part of Judge Cox's order which directs them to arbitrate.

The issue now before us arises from the following portion of Judge Cox's order of August 5, 1975:

> [T]his Court expressly retains jurisdiction of this case and will make

available to the parties all federal discovery procedures *to the extent that it may be necessary to the presentation and decision by the board of any disputed facts.* (Emphasis ours.)

The first sentence of Section 30 of the Commercial Arbitration Rules of the American Arbitration Association provides:

> The parties may offer such evidence as they desire *and shall produce* (emphasis added) such additional evidence as the arbitrator may deem necessary to an understanding and determination of the dispute.

Title 9 of the United States Code, Section 7, authorizes arbitrators to summon witnesses, books, records, documents, and papers deemed material as evidence in the case. United States district courts may compel compliance with the summons.

It is thus readily apparent that under the contract which the parties made, under Rule 30, and under the applicable federal statute the arbitrator can compel the production (discovery) of every book, record, document and paper deemed material to the appropriate resolution of the controversy between Mississippi Power and Peabody.

With reference to discovery, however, Judge Cox's order left the parties standing with one foot in the district court and the other in the arbitrator's office. If arbitration is to proceed, and the law looks with disfavor on delays, two discovery proceedings could be in progress simultaneously, one under the direction of the Court and the other under the control of the arbitrator.

Considerable discovery has been accomplished in compliance with Judge Cox's order, but Peabody objects on numerous grounds to additional extensive discovery proposed by the plaintiff. Plaintiff has countered with a motion to compel discovery. This motion is the issue now before this Court.

Upon a thorough exploration of the applicable law the Court concludes that the motion to compel discovery should be denied and that the arbitration process should be set in motion without further delay.

### The Law as to Discovery Pending Arbitration

So far as I have been able to discover, the Court of Appeals for the Fifth Circuit has had only one occasion to consider this question. This is to be found in the *per curiam* opinion in *Local 66, International Ass'n of Heat and Frost Insulators and Asbestos Workers v. Leona Lee Corp.*, 5 Cir. 1970, 434 F.2d 192. This case appears to approve discovery *on the merits* prior to arbitration. It categorically stated, 434 F.2d at 194:

> Also, the District Court did not err when it specifically made available to the parties federal discovery procedures "to the extent necessary for the presentation of matters submitted for Trade Board and Arbitration determination." Such order is consistent with the District Court's retention of jurisdiction and effectuates the policy favoring arbitration. (footnote omitted).

This sweeping declaration appears to come down emphatically in support of the proposition that in a case ordered to arbitration discovery may proceed simultaneously in the courts and before the arbitrator. This District Court is, of course, obligated to follow the outstanding, unreversed precedents of the Fifth Circuit. The difficulty here, however, is that the *Leona Lee per curiam* never mentions, and does not discuss, outstanding judicial precedent; it does not explicate the reasoning upon which the declaration was grounded. It makes no effort to demonstrate how simultaneous discovery in arbitration cases "is consistent with the District Court's retention of jurisdiction and effectuates the policy of favoring arbitration". It is against the overwhelming weight of authority. I feel, therefore, that the decision in *Leona Lee* must have been grounded on some factor not made clear in the opinion and is not a controlling precedent.

The great weight of authority is clearly to the effect that discovery on the subject matter of a dispute to be arbitrated will be denied. *See* 7 Moore's Fed.Practice ¶ 81.05[7] at 81–82.

In a labor contract dispute case the Fourth Circuit held that discovery on the merits of the case prior to arbitration would be improper, *H. K. Porter Co. v. Local 37, United Steelworkers of America*, 4 Cir. 1968, 400 F.2d 691 There the employer moved to compel arbitration of a claim it had against the union. The union resisted arbitration and attempted to depose company officials. The District Court refused to allow any discovery and ordered the parties to arbitration. The Fourth Circuit affirmed:

> The union sought to depose the plant manager to gain information about the company's claim that the union breached the collective bargaining agreement. The district judge, having determined that arbitration was appropriate, properly refrained from examining the merits of the case.

400 F.2d at 695.

The First Circuit first considered the issue in *Lummus Co. v. Commonwealth Oil Refining Co.*, 1 Cir. 1959, 273 F.2d 613. There the lower court had granted plaintiff's request for a stay of arbitration. The defendant appealed, seeking to delay discovery until after a decision could be had in its pending appeal from the order staying arbitration. The Court granted the motion to delay discovery, declaring:

> We do not rest this decision on the ground that proceeding with discovery may involve lost motion. Rather, we feel appellee makes no satisfactory answer to appellant's contention that a court order of discovery would be af-

firmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation. It seems clear that if arbitration is to be had of the entire dispute, appellee's right to discovery must be far more restricted than if the case remains in a federal court for plenary trial of the issue of fraud. 273 F.2d at 613–14.

The Court's last sentence in the quotation from *Lummus* indicates that there might be a right to some form of restricted discovery prior to arbitration. In a subsequent case Judge Feinberg expressed the opinion that the *Lummus* Court was merely referring to the fact that the parties would be entitled to discovery on the issue of *whether there was an agreement to arbitrate but not on the merits of the controversy. See Penn Tanker Co. v. C. H. Z. Rolimpez, Warszawa,* S.D.N.Y.1961, 199 F.Supp. 716, 718; 7 Moore's Fed.Practice ¶ 81.05[7] at 81–82.

One of the earliest cases to declare that discovery was inappropriate after a stay action was *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.,* S.D.N.Y.1957, 20 F.R.D. 359. There one party had served notice on the other party to arbitrate a dispute in accordance with the terms of their contract. An ex parte order allowing the taking of depositions was obtained and it was from this order that an appeal was taken. The Court found no authority to compel discovery in aid of arbitration, noting:

> By voluntarily becoming a party to a contract in which arbitration was the agreed mode for settling disputes thereunder respondent chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determinations. "A main object of a voluntary submission to arbitration is the avoidance of formal

and technical preparation of a case for the usual procedure of a judicial trial." 1 Wigmore, Evidence § 4(e) (3d ed. 1940). Arbitration may well have advantages but where the converse results a party having chosen to arbitrate cannot then vacillate and successfully urge a preference for a unique combination of litigation and arbitration.

20 F.R.D. at 361.[3]

Numerous other district court cases have declared for various reasons that discovery as to the merits of a suit that has been stayed for arbitration is improper and should not be allowed. *See Econo-Car Internat'l, Inc. v. Antilles Car Rentals, Inc.,* D.V.I.1973, 61 F.R.D. 8, 10, *rev'd* on other grounds, 3 Cir. 1974, 499 F.2d 1391; *Local Lodge 1746, I.A.M. & A.W. v. Pratt & Whitney Div. of United Aircraft Corp.,* D.Conn.1971, 329 F. Supp. 283, 286–87; *International Union of Electrical Radio & Machine Workers v. Westinghouse Elec. Corp.,* S.D.N.Y. 1969, 48 F.R.D. 298, 299; *Pennsylvania Greyhound Lines v. Amalgamated Ass'n,* W.D.Penn.1951, 98 F.Supp. 789, 791–92, *rev'd* on other grounds, 3 Cir. 1952, 193 F.2d 327; *cf. Dickstein v. duPont,* D. Mass.1970, 320 F.Supp. 150, 154, *aff'd,* 1 Cir. 1971, 443 F.2d 783.

Some district courts have said that discovery may be ordered in "exceptional circumstances". *See Ferro Union Corp. v. SS Ionic Coast,* S.D.Tex.1967, 43 F.R. D. 11 (exceptional circumstances found where ship crew was about to leave the country and might never return to U. S. waters); *Penn Tanker Co. v. C. H. Z. Rolimpez, Warszawa,* S.D.N.Y.1961, 199 F.Supp. 716, 718 (dictum); *cf. Bergen Shipping Co., Ltd. v. Japan Marine Serv., Ltd.,* S.D.N.Y.1974, 386 F.Supp. 430, 435. The Court in *Bigge Crane & Rigging Co. v. Docutel Corp.,* E.D.N.Y.1973, 371 F.

---

3. Accord, *Foremost Yarn Mills, Inc. v. Rose Mills, Inc.,* E.D.Penn., 1960, 25 F.R.D. 9; *Penn Tanker Co. v. C. H. Z. Rolimpez, Warszawa,* S.D.N.Y., 1961, 199 F.Supp. 716, 718; *cf. Great Scott Supermkts., Inc. v. Local U. No. 337, Teamsters,* E.D.Mich., 1973, 363 F.Supp. 1351, 1354.

Supp. 240, allowed pre-arbitration discovery on the merits of a case where it would not delay arbitration proceedings. It relied on this Court's *Leona Lee* case and along with *Leona Lee* seems to have gone further than any other case in allowing discovery.

One district court in dictum drew a distinction between "trial" and "proceedings" maintaining that the Arbitration Act compelled a stay of the *trial* but not a general stay of *proceedings. See Donahue v. Susquehanna Collieries Co.,* M.D. Pa.1943, 49 F.Supp. 843, 844, *rev'd,* 3 Cir. 1943, 138 F.2d 3 (Court of Appeals did not discuss the extent of the stay). This argument has been rejected as unsound by recent authority. *See Dickstein v. duPont,* D.Mass.1970, 320 F.Supp. 150, 154, *aff'd,* 1 Cir. 1971, 443 F.2d 783 and cases cited therein.

From the above discussion it is apparent that the vast majority of courts that have considered the matter have concluded that allowing discovery on the merits of a case prior to arbitration is inconsistent with the aims of arbitration. The Harvard Law Review aptly stated this conclusion in one of its surveys on discovery, as follows:[4]

> As to arbitration, discovery is generally not available as an incident of the arbitration proceeding itself. Discovery is expensive and time-consuming, and is thus inconsistent with the desires of parties who refer their disputes to arbitrators rather than to formal judicial tribunals. Moreover, discovery by a collateral application in a court, although authorized in some states, is allowed with reluctance, as it tends to reduce the arbitrator's control of the proceeding. When an arbitration issue is before a court—as in a motion to stay an action allegedly referable to arbitration—discovery has usually been denied unless the stay is refused; again it is thought that the expense of discovery should not be

forced on a party who has agreed to submit a controversy to a less costly method of adjudication.

*See also* 4 Moore's Fed.Practice ¶ 26.54 (2nd ed. 1975) (depositions are properly taken only for the purpose of preparing for trial in a pending action in the district court and not to aid in the disposition of a collateral proceeding such as arbitration).

### The Decision

Within the parameters of this case, the merits of this controversy, including its evidentiary aspects, should be left to the arbitrator.

In reaching this conclusion I need not hold that discovery pending arbitration is never to be allowed, nor am I required to hold, as pontificated in *Leona Lee, supra,* that it is always to be permitted.

Instead, the parties should be held to their agreement and to the availability of Rule 30 of the Rules of the American Arbitration Association. Backed up by the federal statute, this rule allows the arbitrator, in his discretion, to permit any discovery necessary to the performance of his function. There should be no necessity for double-barrelled discovery, proceeding simultaneously under the supervision of the Court, on one hand, and under the supervision of the arbitrator, on the other, a situation fraught with the likelihood of conflicts, duplications, hindrances and delays, all basically in conflict with the arbitration process, as demonstrated by the many cases hereinabove cited. This course avoids anything inimical to the obligation to arbitrate, yet it will not deprive the plaintiff of the benefits of discovery, which can be had, if needed, at the hands of the arbitrator and under his direction.

### V. *Conclusion*

Under the facts, circumstances, and governing law of this case I hold that I am not bound by Judge Cox's original order which allowed discovery to proceed

---

4. 74 Harv.L.Rev. 940, 943 (1961).

on the merits of this controversy pending arbitration or while arbitration is in progress. It need not be said, but I say it nevertheless, that this indicates no disrespect whatever for the prior views of Judge Cox or for his position as a Judge of the same court in which I am now sitting.

I further hold that further discovery on the merits of the controversy *under the retained jurisdiction of this Court* pending arbitration should not proceed any further. I grant no protective order as to the product of discovery *already accomplished* under the terms of Judge Cox's prior order.

Finding that by Section 23 the parties have contracted to submit all unresolved controversies or claims by one party against the other to arbitration, *including adjustment for gross inequities* (Section 18 of the contract), the Court directs that arbitration shall proceed without further delay.

As a condition of the stay in this Court and to insure prompt and efficient arbitration, the parties, within twenty days, will frame and file with the Court the specific questions to be submitted to the decision of the arbitrator.

The parties shall forthwith prepare and submit to the Court an order implementing the conclusions herein set forth.

The Court wishes to say one thing further. This is one of the most serious controversies imaginable. It involves hundred of millions of dollars and public utility rates to be assessed against the general public. If the plaintiff submits an application for an appellate certificate under the provisions of 28 U.S.C. Section 1292(b), the same will promptly be granted. In that event, all further proceedings in this case will be stayed pending the decision of the United States Court of Appeals for the Fifth Circuit, which, short of review by the Supreme Court, will settle the issue.

ORDER

It is hereby ordered and adjudged by this Court:

(1) That defendant Commercial Transport Corporation's request for rehearing on their Motion to Dismiss, as conveyed to this Court by letter dated December 9, 1975, is hereby denied;

(2) There being no arbitration clause in the contract between Mississippi Power Company and Commercial Transport Corporation, discovery processes may continue between those parties as to the complaint against Commercial.